K. McKinley Smith,

*vs.*

The Biggs Boiler Works Company, et al.

*New Castle, July 6, 1951.*

150

---

1 By stipulation of counsel the entire agreement was made a part of the complaint in this action.

' *John VanBrunt, Jr.*, of Killoran & VanBrunt, Wilmington, for the petitioner.

*William E. Taylor, Jr.*, Wilmington, and *Edward C. Crouch*, of Marshman, Hollington & Steadman, of Cleveland, Ohio, for defendants.

LAYTON, Acting Vice Chancellor:[3] The question presented is whether a valid voting trust may be formed under *Section* 18 of stock then in escrow, where the voting trust agreement recites the existence of the escrow agreement, deems the stock thereby deposited as though deposited with the voting trustees and states the intention of the owners of the stock to deposit it physically with the voting trustees immediately upon the termination of the escrow agreement.

This court has repeatedly held that the provisions of *Section* 18 are mandatory. *In re Chilson*, (1933) 19 *Del. Ch.* 398, 168 *A.* 82, such an agreement was struck down where the certificates, instead of being deposited with the voting trustees, were transferred to them temporarily, stamped with a legend indicating that they were to be voted subject to the voting trust agreement and then returned to the owners. In *Perry v. Missouri Kansas Pipe Line Co.*, (1937) 22 *Del. Ch.* 33, 191 *A.* 823, a voting trust agreement was declared invalid which by its terms pur-

---

[2] "One or more stockholders may by agreement in writing deposit capital stock of an original issue with or transfer capital stock to any person * * * or corporation * * * authorized to act as trustee, for the purpose of vesting in said person * * * who may be designated * * Voting Trustees, the right to vote thereon for any period of time * * * not exceeding ten years."

[3] This case was assigned to me by virtue of Aritcle IV, § 10 of the recent constitutional amendment relating to the judiciary under which in cases of emergency a judge of the Superior Court may be assigned to a Chancery case.

ported to extend for eleven, instead of ten years, as permitted by *Section* 18. And in *Appon v. Belle Isle Corporation,* 29 *Del. Ch.* 127, (1946) 46 *A.* 2*d* 749, another such agreement was nullified because the provisions of *Section* 18 concerning the extension of voting trusts were violated.

 Before even considering the major objection presented here—the fact that the stock was not, and obviously cannot for sometime to come, be deposited with the trustees—some preliminary consideration should be given to another question which has given me concern. The voting trust agreement recites portions of the escrow agreement from which it may be assumed that upon the happening of certain conditions the ownership of the escrowed stock must be transferred to third parties. Parenthetically, I suppose it is fair to say that under most agreements wherein stock is pledged or escrowed, rights of third parties will accrue in the stock under certain eventualities. Should then, as a matter of judgment and sound policy a voting trust agreement, which disposes of the voting rights to stock for as long as ten years, be upheld when the stock is then in escrow and where, long before the expiration of the escrow agreement, third parties may have succeeded to the ownership of the stock? I have finally concluded that such an objection is not valid for this reason. Under the escrow agreement in this case Smith and Krizanek, the owners of the stock, would have been free to vote it as they pleased until such time as the condition happened requiring its transfer to new owners. Why, then, should they not be able to exercise their right to vote, so long as it exists, through some such legal device as a voting trust? I do not mean to say, of course, that the voting trust agreement thus formed would prevail over the rights of subsequent transferees under the escrow agreement. Such a conclusion would be absurd. I am not here dealing with such rights but merely with a dispute between those having the existing rights to vote the stock and, having the right to vote it as individuals, I can conceive of no valid objection to their

joining together under a voting trust agreement to vote it so long as the voting rights exist in them.

I now turn to petitioner's main objection to the validity of this agreement—the failure to deposit the shares with the voting trustees. While as already observed, all the decisions of this court above reviewed have held that the provisions of *Section* 18 are mandatory, only the *Chilson* case bears directly upon that portion of the statute requiring that the shares be deposited with the voting trustees. The facts of the *Chilson* case differ from the case at bar in one important respect. In that case there was no obstacle whatsoever to the deposit of the stock with the voting trustee but the organizers of the trust, in order to save expense, deliberately violated the provisions of the section. Here it was physically impossible to comply with the requirements of the statute concerning the deposit of the shares and a larger consideration emerges—did the Legislature, intend that no voting trust could be organized with shares in pledge or in escrow?

Aside from the obvious argument that, had the Legislature intended such a result, *Sec.* 18 should have so specified in language permitting of no doubt, an additional answer to the legislative intent may be found in the decision of the Supreme Court in *Ringling Brothers —Barnum and Bailey Combined Shows, Inc., v. Ringling,* 29 *Del. Ch.* 610, 53 *A.* 2d 441, 446. In that case the Supreme Court considered the validity of a contract between two shareholders to vote their shares jointly. The agreement went on to provide that in the event of a dispute between the owners as to the manner in which their shares should be voted, a named arbitrator would be called upon to decide the dispute. Each party bound himself to vote in accordance with the decision of the arbitrator. It was argued that this agreement was invalid because *Section* 18 of the *Delaware Corporation Law* provided the only means by which the voting rights to shares could be separated

from ownership and that since this contract did not comply with the provisions of the section respecting voting trusts, it was necessarily invalid. The Supreme Court, nevertheless, sustained the agreement and stated, among other things:

"Having examined what the parties sought to provide by the agreement, we come now to defendants' contention that the voting provisions are illegal and revocable. They say that the courts of this state have definitely established the doctrine 'that there can be no agreement, or any device whatsoever, by which the voting power of stock of a Delaware corporation may be irrevocably separated from the ownership of the stock, except by an agreement which complies with *Section* 18' of the *Corporation Law*, *Rev. Code* 1935, § 2050, and except by a proxy coupled with an interest. * * *''

"The broad prohibitory meaning which defendants find in *Section* 18 seems inconsistent with their concession that proxies coupled with an interest may be irrevocable, for the statute contains nothing about such proxies. The statute authorizes, among other things, the deposit or transfer of stock in trust for a specified purpose, namely, 'vesting' in the transferee 'the right to vote thereon' for a limited period; and prescribes numerous requirements in this connection. Accordingly, it seems reasonable to infer that to establish the relationship and accomplish the purpose which the statute authorizes, its requirements must be complied with. But the statute does not purport to deal with agreements whereby shareholders attempt to bind each other as to how they shall vote their shares. Various forms of such pooling agreements, as they are sometimes called, have been held valid and have been distinguished from voting trusts. * * * We think the particular agreement before us does not violate *Section* 18 or constitute an attempted evasion of its requirements, and is not illegal for any other reason."

In the light of this holding, the motivating argument that the Legislature must have intended that shares in pledge or escrow may be the subject of a valid voting trust becomes far less persuasive. The fair implication from the decision in the above case is that since the owners of shares in pledge or escrow may, in general, accomplish the same purpose contemplated by the voting trust statute by other legally permissible methods, then the Legislature

could not have intended that shares of stock, which could not be physically deposited with voting trustees as required by the provisions of *Section* 18, could ever become the subject of a valid voting trust. It necessarily follows, therefore, that the voting trust agreement before me is invalid because the mandate of the section requiring a deposit of the shares with the voting trustees was not and could not be complied with.

Other arguments are advanced as to why this agreement, even though not a valid voting trust is, nevertheless, legally enforceable. It is contended that it represents a pooling agreement, of an irrevocable proxy coupled with an interest, or an agreement enforceable under the theory of the *Ringling* case just discussed. However, I am unable to agree with these arguments. In a pooling agreement the owners of shares combine and vote them in accordance with the agreement, but Steadman, one of the parties to the agreement, is not the owner of any of the stock in question. Again, none of the parties to this agreement, particularly Steadman, has such a legal interest in the stock of the other as to permit the construction that, in legal effect, it should be regarded as a proxy coupled with an interest. Moreover, if this agreement is construed as a proxy to the three voting trustees to vote the shares it was not an irrevocable proxy and was revoked by Smith when he wrote the corporation, Krizanek and Steadman in effect that he considered the notice of the meeting invalid and its purposes illegal. Nor, in my judgment, does the *Ringling* decision govern this contract because of the obvious distinction between it and the agreement under consideration by the court in that case.

It is conceded by defendants that if the agreement before me is neither a valid voting trust nor a legally enforceable contract to vote the shares jointly, then the purported ouster of petitioner, Smith, from the board of directors and as president of Biggs, was invalid. I so hold.

I regret that I have had but a limited time in which to consider the difficult problems presented by this litigation, but the need for a speedy disposition of the case is clearly indicated in order that the unsuccessful parties should have a fair opportunity to perfect an appeal.

An order will be entered in accordance with this opinion.

For denial of motion for stay preceding appeal see *post* p. 411, 82 *A*. 2*d* 919.